IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SONNY OWENS,

        Plaintiff,

v.                                                                   Civil Action No. 5:10cv60
                                                                    (Judge Stamp)

JIM RUBENSTEIN, ADRIAN HOKE,
DR. DAVID PROCTOR, CAPT. BALDUCCI
AND WEXFORD HEALTH SERVICES,

        Defendants.

**REPORT AND RECOMMENDATION
RECOMMENDING DISMISSAL OF CASE**

### I.   Procedural History

On June 3, 2010, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. On June 30, 2010, the plaintiff was granted permission to proceed as a pauper. No initial partial filing fee has been assessed. Accordingly, this case is before the undersigned for an initial review pursuant to 28 U.S.C.§§ 1915(e) and 1915A, and LR PL P 83.01, et seq.

### II.   The Complaint

In the complaint, the plaintiff alleges that staff at the Huttonsville Correctional Center are denying him needed hip replacement surgery. The plaintiff asserts that he is in "great pain" and has "trouble walking and getting out of bed." The plaintiff further asserts that he has been denied needed medical passes and as a result, fell and injured himself. After his fall, the plaintiff asserts that he was given only a cursory medical examination by a nurse and that Captain Balducci and Dr.

Proctor failed to help him. Although not specifically stated, it appears that the plaintiff claims he received inadequate medical treatment in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

### III. Analysis

The plaintiff does not cite a jurisdictional basis for his claims. Nonetheless, because he appears to assert that his Eighth Amendment constitutional rights were violated, the Court has construed the plaintiff's as arising under 42 U.S.C. § 1983 (the mechanism for seeking the enforcement of a federal right against state actors). Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Thus, in order to state a successful claim under § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of a right guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 457 U.S. 830, 838 (1982).

### A. Wexford Medical Health Service

"Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit." Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official

capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983).

Like a jail, Wexford Medical Services is not a "person" for purposes of § 1983. Accordingly, Wexford Medical Services is not amenable to suit under § 1983 and should be dismissed as a defendant in this action.

**B.    Jim Rubenstein and Adrian Hoke**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff does not make any specific allegations against defendants Rubenstein or Hoke.[1]  Nor does he assert that they were personally involved in any violation of the

---

[1] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the

plaintiff's constitutional rights. Rather, it appears that the plaintiff merely names defendants Rubenstein and Hoke in either their official or supervisory capacities as the Commissioner of the West Virginia Division of Corrections and Warden of the Huttonsville Correctional Center, respectively. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

As to supervisory capacity, as previously noted, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in

---

relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2]

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Consequently, the plaintiff fails to state a claim against defendants Rubenstein and Hoke and he cannot maintain an action against them.[3]

## C. Captain Balducci and Dr. Proctor

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

[3] To the extent the plaintiff asserts that either Rubenstein or Hoke were deliberately indifferent to his serious medical needs by denying his administrative grievances, or by failing to respond to such grievances, that claim is also without merit as this is not the type of personal involvement required to state a claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

5

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an

individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

**1. Failure to Provide Medical Passes**

In the complaint, the plaintiff asserts that he fell and injured himself as a result of medical staff's failure to provide him with certain medical passes, particularly, an elevator pass. Nevertheless, the plaintiff fails to allege that anyone of the named defendants were involved in failing to issue the medical passes. In fact, Dr. Proctor is the only medical personnel named in this suit and the plaintiff does not allege that he had any involvement with Dr. Proctor prior to his fall. Accordingly, the plaintiff has failed to allege a viable claim against any of the named defendants for failing to issue him medical passes.

**2. Plaintiff's Treatment After His Fall**

(a) Captain Balducci

In the complaint, the plaintiff asserts that after his fall he was given only a cursory examination by a nurse. Thereafter, he approached Captain Balducci for help with his medical needs. The Captain told the plaintiff that he could not override the nurse's decision. The plaintiff concedes that the Captain spoke to the nurse on his behalf and that as a result, Dr. Proctor was telephoned. Dr. Proctor apparently ordered that the plaintiff be placed in medical observation and that was done.

Moreover, there is no evidence that Captain Balducci is a doctor or other member of the medical profession. It appears he is a correctional officer. As such, he had no authority over the

plaintiff's medical treatment. Nonetheless, when the plaintiff complained to the Captain about his perceived lack of medical treatment, Captain Balducci spoke with the nurse and was apparently instrumental in obtaining Dr. Proctor's involvement in the case. Accordingly, the plaintiff has failed to show that Captain Balducci was involved in any violation of his constitutional rights and the Captain should be dismissed from this case.

      (b)   Dr. Proctor

As to Dr. Proctor, it appears that he was not even at the facility on the date on which the plaintiff fell and was injured. The plaintiff was examined by a nurse and Dr. Proctor was consulted by telephone. The doctor ordered that the plaintiff be placed in medical observation and he examined the plaintiff the next day. The plaintiff was given a wheelchair and assigned a new dorm. Later that day, one of the front wheels on the wheelchair broke. The plaintiff returned to medical and was told to either ride the chair given, or go back to the medical observation room. Because he felt the wheelchair was unsafe, the plaintiff chose to return to the observation room. The plaintiff complains that while in the medical observation room, he lost all privileges, all personal property and he was not allowed to leave the room. The plaintiff was given crutches the next day and again assigned a new dorm. The plaintiff asserts that he was placed in the medical observation room as punishment -- the first time for wanting a wheelchair and elevator pass, and the second time for complaining about the broken wheel chair.

The plaintiff is clearly unhappy with the medical treatment he received after his fall. He has not, however, shown that Dr. Proctor denied him medical treatment or that the medical treatment prescribed was inappropriate. He merely complains because while in the medical observation unit he lost his privileges, property and ability to move about. None of those things, however, establish

8

that Dr. Proctor was deliberately indifferent to the plaintiff's serious medical needs or that he acted with a sufficiently culpable state of mind.

At best, the plaintiff disagrees with the type of treatment prescribed by Dr. Proctor. However, as previously noted, a mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d at 849. No such circumstances have been presented in this case.

### 3. Plaintiff's Hip Replacement Surgery

As to the plaintiff's hip replacement surgery, he has failed to establish that any such surgery is medically necessary. Neither has he shown that any one of the named defendants has acted in any way to deny him such surgery. Without any evidence or allegations to establish that the surgery is necessary or that any of the named defendants have been involved in the denial of that surgery, the plaintiff cannot establish that the named defendants violated his Eighth Amendment rights with regard to this issue.

## IV. Recommendation

For the reasons stated, the undersigned recommends that the plaintiff's complaint (dckt. 1) be **DISMISSED** from the active docket of this Court in the following manner:

(1) the plaintiff's claims against defendants Rubenstein, Balducci and Wexford Medical Health Services be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915A and 1915(e) for the failure to prove any set of facts which could establish a claim for which relief may be granted; and

(2) the plaintiff's claims against defendants Hoke and Dr. Proctor be dismissed without prejudice for the failure to allege any facts which state a claim for which relief may be granted at this time.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 13, 2010.

　　　　　　　　　　　　　　　　　/s/ David J. Joel
　　　　　　　　　　　　　　　　　DAVID J. JOEL
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE